I want to again express the appreciation of the judges of the First Circuit to Justice Souter for graciously agreeing to sit with us. And I can tell you, judge to lawyer, it's a real pleasure to have him on the bench. Thank you. Proceed. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 181924 and number 181985, United States v. Brian Larson. Mr. Faulkner. Good morning, your honors. May I reserve two minutes for the vote? Yes, you may. The central question in this case, your honors, is whether there's probable cause, whether there's a substantial chance of criminal activity, and whether there will be evidence to find that in the residence that is searched. The warrant in this case describes a fair amount of legal conduct and no illegal conduct whatsoever. And so when assessing that warrant, the court needs to go through, although the court needs to view the totality of the evidence, we need to look at the specific information that's in that warrant in order to determine when we put it all back together whether we get to probable cause. The pieces of evidence that are in that warrant are simply insufficient. We know that in 1994, the appellant, at the age of 21, the appellant was convicted of not any kind of possession but sex crimes that were contact sex crimes. All these years later, in 2014, there is, we know, some kind of complaint that he's seeking to trade photographs, and that goes to the national database. There's no investigation of that whatsoever. There's no indication of what kind of photographs are involved in this 2014 request for a trade. Counsel, in addition to the three albums that are cited in the affidavit submitted in the request for the warrant, which you say are all non-pornographic, the affidavit also recounts how your client, I think perhaps 11 times over three days, attempted to get what the affidavit suggests he would understand to be preteen hard pornography by repeatedly hitting on the link. As part of the totality of the circumstances, the magistrate was certainly entitled to consider that in addition to the three albums that you described as containing non-pornographic material. Isn't that so? The magistrate certainly was entitled to consider what's demonstrated in the affidavit. I don't believe that the affidavit ever demonstrates that there's multiple clips on any individual link. There are two emails that are sent. The first email does reference the name that is one of the albums, and there's one click on that link. There's nothing about the link in the first email, though, that in any way indicates that it is pornographic. What about the second one? The second link does not reference any of the albums whatsoever. It just simply says, here are some videos that I'd like to share with you. The link does use the code PTHC, which aficionados of child pornography understand to mean preteen hardcore. It's a clue. Yet there are a number of clicks, as Judge Lopez said. I have two responses to that. First of all, the link itself is a list of nine links, and there are 74 characters each. Embedded in the middle of a 74-character link are the letters in sequence PTHC. However, I would suggest that in the way that those links are to be demonstrated, there's nothing about the link itself that makes those letters stand out as anything other than letters in sequence that are part of a link. The second part of it is that the affiant says that he understands what those letters mean, but he does not aver in the affidavit that those letters would be known to any other particular person, and he doesn't describe any basis how that would be known. So he doesn't describe in the affidavit that those letters would be known by collectors, as opposed to law enforcement, or would be known by persons that are searching on the Internet. He just simply says, I know what these letters mean. Since the letters are used in a way which does not apparently appeal directly to law enforcement, isn't it reasonable to suppose that the use of the letters was aimed at people who were looking for just what the letters stand for? Well, the letters aren't used by Mr. Larson. The letters are used by the agent that's sending the emails. We have a Canadian law enforcement agent that is emailing out the link with these letters embedded in it, but we don't have Mr. Larson doing a search for these letters or anything like that. No, he clicks on the links that identify themselves as likely containing this information, and if you're saying the police were required to have put in the affidavit that he knew what these letters stood for, that argument strikes me as nonsensical. How can they prove it until they execute the search warrant and they get the information? Well, my argument isn't that they had to prove that he knew what they were, but they needed to demonstrate some reasonable likelihood that he would. Isn't it reasonable to infer that a Mountie who specializes in this area and says, you know, it's pretty clear to me what these letters stand for, that it would be clear to people who do collect child pornography what it stood for? What's unreasonable about that inference? But what we don't have is, aside from the Mountie's use of these letters, any evidence that he is, in fact, somebody who collects child pornography. It may be reasonable to assume a child pornography collector would, but the only evidence, theoretically, that he is such a collector is these letters themselves. But Counsel, you have these albums which, understood, they're not characterized as pornographic, but you have these albums which are photographs of prepubescent male and female children, five years or younger. This really is a classic totality of the circumstances case. I mean, you can piece by piece try to dismiss the significance, and, of course, that's your job, and I understand that. You can dismiss piece by piece the significance, but this is certainly a case where the sum is greater than all the parts. And so given the pictures in those albums, that lends significance to the PHTC initials in those links that he uses. Again, you're just putting all those pieces together. Well, may I answer Your Honor's question? Yes, of course. I agree that all the evidence needs to be put together. What I would suggest is that these albums themselves, and particularly the albums that have pictures of children, they are simply pictures of children. You can use the word prepubescent children, but they're simply pictures of children engaged in everyday activities. Your Honor. There's also your dispute about the device you can buy on Amazon, the sex toy, and that it's not just alone. There are pictures of a male penis on it. How do you explain that away? The response I have to that, Your Honor, is that, and that's a separate album. Those pictures are pornographic, but those pictures are not pornographic of all the children. I see. The argument is it's adult pornography and not child pornography. That's correct. Well, I gather from the briefs that that particular photograph showed, I guess you would say, little girls' clothing as part of the photo, which would suggest that the impression is intended to talk about children rather than adults, regardless of who may actually have been the person posing. Doesn't the accompaniment of children's clothing sort of add up in the direction against the trend of your argument? Well, I'm not sure that it does, Your Honor. In one or two of the images, there does appear to be clothing of some kind, and Your Honors have the specific images in the record appendix that can be viewed. I would suggest that clothing enough is not enough to transform that into illegal activity whatsoever. It is, however, I would think, enough to suggest that the person possessing it does intend to possess child pornography. I'm not sure. As I understand it, both of the charges against him are attempt charges, and don't the circumstances that you and I have just been talking about give an indication which it is reasonable to infer as an indication that child porn is really what this person is after? Well, the affidavit sought to search for evidence of attempted child pornography. The actual charges that were brought based on the results of the search were possession of child pornography. But what I would suggest is that the possession of legitimate images of adult pornography, even if they would include those children, aren't enough to demonstrate an intention in clicking on some other link to possess child pornography. That those two circumstances together aren't enough to raise that bar to the level of a reasonable chance of criminal activity. Okay, you've reserved some time. Pardon me? Yeah, go ahead. No, I was going to say that simply brings your response, simply brings us back to the point that Judge Lopez made earlier. We're not talking about one discrete bit of background evidence. This is part of a series of background evidence. That's correct. I agree that we need to view all the evidence together, and the contention is when we look at the possession of these three legitimate legal albums combined with simply clicking on these links, where these letters are buried and embedded down into the links, that's in combination. That's not enough for probable cause to search a home for the possession or for the attempted possession of child pornography. And if there's nothing further, I'll rest. All right. Good morning. May it please the Court. Alexia DiVincentis on behalf of the United States. The fundamental flaw with the defendant's challenge to the facial validity of the warrant is that it relies on a divide-and-conquer analysis that is antithetical to the totality of the circumstances approach that the law requires. When the nature of the post, the forum in which the defendant chose to place that post, and his response to the investigator's emails are considered as they must be as a whole, they provide ample support for the magistrate's probable cause determination. Counsel, one thing that I find unsettling is that when the three categories are found of what he has, there is a description provided by the Mountie of the images, but there are no images. There's not even an image of the sex toy, and the Court is left with having to rely on the Mountie's description of it. That doesn't strike me as optimal practice. Perhaps not optimal, but there was no requirement that the government attach the photographs to the affidavit. The best practice of attaching photographs that is described in the Cypress case on which the defendant relies applies in cases in which the probable cause determination hinges on a determination by a judicial officer that the images at issue constitute child pornography, such that the affiant has to provide something more than simply his belief that the images are indeed pornographic. Aren't you doing a divide and conquer with that response? You can ignore the fact that what started this investigation, the police didn't see fit to provide the actual images to the trial judge and just rely on everything else? I think it's important to note there that in the Cypress-Brunette line of cases that suggest this best practice of attaching photographs, even there it's recognized that a detailed description can stand in place for the actual photographs. We have that here. The magistrate had a detailed description of the images contained in the My Toy album that would enable the magistrate to determine what inferences could reasonably be drawn from it. I think this bleeds perhaps a little bit into the defendant's Franks challenge, which wasn't discussed here today but is obviously raised in the brief. And I do think it's telling that neither in his brief nor here today has the defendant identified an alternative, allegedly more accurate description of this item. And moreover, even if the phrase life-like infant torso were substituted for whatever an allegedly more accurate description might be, the affidavit would still continue to supply the inference that the individual posting these images was essentially advertising a sexual interest in children. Now, the defense counsel here today has focused on what he called the photographs of children engaged in everyday activities that was contained within I Love Mackenzie's albums. But, of course, that isn't all that was there. Alongside images of actual children were images in which an adult male penis was penetrating a life-like infant torso or, if you will, an object, a small-sized object that was staged to look like a small child or an infant by having it dressed in Cinderella underwear and surrounded by children's blankets. Again, the fair inference to be drawn from those photographs is that the defendant was effectively advertising a sexual interest in children. Now, it's also relevant to the totality of the circumstances analysis that the defendant chose to post these images on ImageSource. In his brief, the defendant focuses quite a bit on what is lacking in the affidavit in terms of the description of the website. But, of course, an affidavit is judged not by what it doesn't contain but by what it does. And the affidavit here specifically notes that ImageSource is a forum in which it is known that individuals often post sexually suggestive images of children, lending to the inference that the defendant chose this particular forum with the understanding and intent that others on it would share his interest in children and engage in a trading of child pornography. Now, it's against this backdrop of the nature of the post and the nature of the forum that we have to analyze the emails that the investigator sent and the defendant's response to them. These were not randomly received emails. The fair inference is that these emails were sent directly in response to the defendant's postings. And the defendant's arguments that these emails weren't sufficiently explicit is untenable given the overall context. I would also suggest that it is dangerous insofar as it appears to rely on the assumption that the sexually explicit nature of the emails must be made explicit, which would suggest that only the most incautious of individuals could be found to reasonably be thought to believe to be engaging in an attempt to possess child pornography. Unless there are any further questions, the government would rest on its briefs. If you're caught by surprise by anything in counsel's rebuttal, we'll hear you again. Thank you. As to the nature of the emails themselves, the contention isn't that it has to be explicit. But the emails have to suggest to a reasonable person that they, in fact, do contain it. It could be implicit, certainly. But there's got to be something from which the magistrate can determine that a reasonable, ordinary person who's in receipt of these images would know that would be intending to possess sexually explicit material involving young children. What do you make, I didn't remember the name when I asked the earlier question, but what do you make of the significance of the Cinderella clothing? Again, the clothing itself doesn't necessarily limit itself to being possessed by children, and it's not, and your honors can look at the images themselves, but the mere fact that the clothing that is next to the ordinary sex toy is Cinderella clothing does not, in and of itself, suggest that there's any child involved in sexual activity whatsoever. And I think that's where that album would have to go. In terms of the image source website, I would simply point out that the affiant suggests that there's sexually explicit material on that website, but acknowledges that any illegal material is immediately taken down by the hosts of that website. And there's no indication of the frequency with which people illegally post images on that website. So we don't have any idea from reading this affidavit whether a fraction of a percentage of posters on this website post illegal material, or whether some much larger percentage does. If the court doesn't have any further questions, I'd rest on the brief. Thank you. I know. Okay, thank you both.